IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLOTTE ROSS | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 09-CV-02361 |
| | § | |
| HOUSTON HOUSING AUTHORITY | § | |
|     Defendant | § | |

**DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Houston Housing Authority ("HHA" or "the Agency") files its Response to Plaintiff's Motion for Partial Summary Judgment as follows:

**I.
Introduction and Summary of Argument**

Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983 and are premised upon an alleged lost property right and violations of due process. As briefed and argued in Defendant's Motion for Summary Judgment, Dkt. 22, HHA proposed to terminate Plaintiff's housing assistance benefits, but an Agency hearing officer determined, without holding a hearing, that Plaintiff's benefits should not be terminated. Accordingly, Plaintiff did not suffer the loss of a property right. Assuming *arguendo*, Plaintiff can prove the loss of a property right, her claim also fails because she does not plead or offer evidence demonstrating that an official policy, practice or custom caused her alleged due process violations. Finally, Plaintiff's due process rights were not violated by Defendant. Therefore, Plaintiff's claims are unsupported by fact and law, and her Motion for Partial Summary Judgment must be denied.

**II.**
**Summary Judgment Evidence**

Defendant incorporates by reference its Motion for Summary Judgment and all summary judgment evidence therein, including exhibits. *See* Dkt. 22. Specifically, one key piece of evidence counters Plaintiff's claims on summary judgment: the affidavit of Ngoc-Bich "Bich" Tran. Dkt. 22, Exhibit B. In her affidavit, Ms. Tran states:

> I determined that the ground on which the termination was based, failed criminal background check for Ms. Ross for the offense of theft by check, was not a criminal activity for which the HHA could terminate assistance. Accordingly, as a part of my job function and routine, I informed the assigned or terminating HHA occupancy technician that no hearing would be required and that Ms. Ross' housing assistance should not be terminated.

Dkt. 22, Exhibit B. As discussed below, Ms. Tran's affidavit demonstrates that Plaintiff's benefits were not terminated and no hearing was held because Plaintiff's benefits would not be terminated.

It is equally important to note what is ***not*** summary judgment evidence and cannot be used by Plaintiff to create an issue of material fact: Plaintiff's statements made in her summary judgment affidavit that contradict, without explanation, her sworn deposition testimony. *See Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 136-37 n.23 (5th Cir. 1992). In support of her claim that HHA improperly terminated her benefits "(because the HHA sent notice of the termination hearing to a defunct address) without any good opportunity for a hearing," Plaintiff claims in her affidavit that she contacted the Agency several times after October 31, 2008, the date that she requested her informal hearing. Dkt. 23, p.

2 ¶ 4, p. 4 ¶ 10;[1] Dkt. 23-8, pp. 4-5 ¶ 13 (Plaintiff's affidavit supporting summary judgment);[2] Dkt. 16, p. 15 ¶ 48.[3]  To the contrary, Plaintiff gave sworn testimony in her deposition that she did not contact HHA after October 31, 2008.  Dkt. 22, Exhibit A at 79:24-80:9,[4] 81:22-82:1.[5]  Thus, because Plaintiff makes no attempt to explain the contradiction between her affidavit and her deposition testimony, Plaintiff's claims that her due process rights were violated cannot be supported by assertions made in her affidavit that she contacted the Agency after October 31, 2008.

## III.
## Argument and Authorities

The first inquiry in a Section 1983 due process challenge is to determine if a property interest is at issue, and then, if a property interest does exist, to determine if a policy, practice, or custom caused a due process violation. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999); *see also James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (requiring in addition to

---

[1] "While waiting for her hearing, Ross was judicially evicted from her home at Shadow Ridge, and Ross informed the HHA of that event when it happened." Dkt. 23, p. 4 ¶ 10.

[2] "After I gave the HHA my written notice, I called a few times to urge them to set my hearing quickly because Shadow Ridge had already filed a lawsuit to evict me.  I also called to inform them when the justice of the peace entered a judgment against me." Dkt. 23-8, pp. 4-5 ¶ 13.

[3] "[W]hen it finally scheduled that hearing, the HHA sent notice of the hearing to the address from which (as was already known by the HHA) Ross had been evicted." Dkt. 16, p. 15 ¶ 48.

[4] "**Q**: Okay. But what did you do about your request for a hearing?  What was the next thing you did after you made this request on October 31st, 2008?  **A**: Waited to hear back.  **Q**: Okay.  And did you ever contact them?  **A**: No.  **Q**. Okay.  Did you ever hear back from them?  **A**: No.  **Q**: Did you ever go back in and ask for a move packet?  **A**: No." Dkt. 22, Exhibit A at 79:24-80:9.

[5] "**Q**: And so you haven't had any contact – direct contact with anyone at the Housing Authority since the day that you submitted your request for hearing, dated October 31, 2008?  **A**: Correct." Dkt. 22, Exhibit A at 81:22-82:1.

a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of, the constitutional injury); *Burgess v. Alameda Hous. Auth.*, 98 Fed. Appx. 603, 605 (9th Cir. 2004) (affirming the district court's dismissal of Plaintiff's due process claims concluding that the plaintiff had failed to allege that such claims resulted from an official policy, practice or custom).

Plaintiff contends that she had a property interest in the continued receipt of housing assistance benefits and that those benefits were terminated in a manner that "violated the constitutional guarantee of the due process of law." *See* Dkt. 23, p. 2 ¶ 4. Plaintiff specifically asserts that her benefits were terminated without good cause or proper notice, and without an opportunity for a hearing.[6] Dkt. 23, p. 2 ¶ 4.

**A.     Plaintiff Suffered No Lost Property Interest.**

Defendant's Motion for Summary Judgment discusses in detail the circumstances that led Plaintiff to mistakenly believe that her housing assistance benefits were terminated. Dkt. 22, pp. 2-8, 13-15. In short, Plaintiff erroneously asserts that the Notice of Termination of Assistance—notice to inform Plaintiff that Defendant proposed to

---

[6] To the extent that Plaintiff asserts substantive due process claims, those claims must fail. Substantive due process "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (internal citations omitted). Only the most egregious official conduct can be said to be arbitrary in the constitutional sense—the conduct must shock the conscience—far beyond negligently inflicted harm that is beneath the threshold of constitutional due process. *McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th Cir. 2002). Plaintiff does not complain of any act that might shock the conscience, but instead complains of mere negligence. *See* Dkt. 20, p. 10 ¶ 3 (stating twice that she incurred damages due to HHA's "error").

terminate her benefits—was an actual act of terminating her benefits.[7]  *Id*. at 13-14. Instead, the Agency's hearing officer determined that the proposal to terminate Plaintiff's benefits was in error, removing the need for a hearing and removing the potential for Plaintiff losing her property interest.  *See* Dkt. 22, Exhibit B.  No informal hearing was held and no decision was issued by the hearing officer.  *Id*.  Plaintiff remained eligible for continued housing assistance but failed, on the advice of her counsel, to make any inquiry with the Agency regarding her benefits after she requested an informal hearing on October 31, 2008.  Dkt. 22 at p. 11; Dkt. 22, Exhibit A at 79:24-80:9, 81:22-82:5.  HHA did not disturb Plaintiff's property interest in the continued receipt of her housing assistance benefits, and Plaintiff can present no evidence to the contrary.

**B.     Plaintiff Does Not Plead That Any Alleged Due Process Violations Were Directly Caused by an Official Policy, Practice, or Custom of the Agency.**

As briefed in Defendant's Motion for Summary Judgment, Plaintiff's Amended Complaint fails to suggest that any Agency policy, practice, or custom was the direct cause of her alleged due process violations, or that the Agency's policy maker acted with deliberate indifference.  Dkt. 22, pp. 9-12.  Indeed, Plaintiff's Motion for Partial Summary Judgment also fails to suggest as much or provide any evidence of the same. Dkt. 23.  Plaintiff essentially attempts, contrary to established authority, to support her

---

[7] Plaintiff contradicts her assertion that she believes her benefits were actually terminated by the proposed Notice of Termination.  She describes a conversation with an HHA employee:
> I told explained (sic) that the charges against me were still pending, and ***I asked what I would have to do so that I wouldn't be terminated*** from the Voucher Program.  An HHA employee told me that I would have to ask for a hearing where I could explain everything to the hearing officer, and that ***the hearing officer would decide whether or not I would be terminated***.

*See* Dkt. 23-8, p. 3 ¶ 9 (emphasis added).

5

Section 1983 claims through a *respondeat superior* theory of liability. *See Bolton*, 541 F.3d at 548; *Piotrowski*, 237 F.3d at 578. Summary judgment on Plaintiff's Section 1983 claims should be denied. *See Burgess*, 98 Fed. Appx. at 605.

**C.     Defendant Provided Proper Notice and Opportunity to be Heard.**

Plaintiff complains that she did not receive proper notice or an opportunity for a hearing, and that her benefits were terminated without good cause. Dkt. 23, p. 2 ¶ 4; *see Mathews v. Eldridge*, 424 U.S. 319, 325 n.4 (1976) (quoting *Goldberg v. Kelley*, 397 U.S. 254, 266-271 (1970) (analyzing due process requirements for terminating welfare benefits)). Plaintiff's complaints disregard the undisputed fact that no informal hearing was held to terminate her benefits because the hearing officer determined that it would be improper to terminate Plaintiff's benefits. *See* Dkt. 22, Exhibit B.

    1.     <u>The Agency Provided Adequate Notice</u>.

The Agency provided adequate notice that briefly detailed the reason for the proposed termination of Plaintiff's housing benefits. *See Billington v. Underwood*, 613 F.2d 91, 94 (5th Cir. 1980) (requiring a notice of proposed termination to "be sufficiently specific for it to enable an applicant to prepare rebuttal evidence to introduce at [her] hearing"); 24 C.F.R. § 982.555(c)(2)(i) (notice of an informal hearing must include "a brief statement of reasons for the decision"). The Notice of Termination of Assistance, issued on the same day Plaintiff was arrested for outstanding theft by check warrants, stated "Client failed the criminal background check." Dkt. 16, Exhibit E. The Notice did more than merely parrot language in regulations. *See Billington*, 613 F.2d at 94 (stating

the notice at issue failed to provide sufficient notice because it merely parrotted broad language found in regulations).

Plaintiff claims the Notice was inadequate because it did not provide sufficient details regarding the alleged crime, the people involved, and the date the crime was committed. Dkt. 23, p. 3 ¶ 7. Even though the Notice provides a brief statement of the reason for proposed termination and enabled her to prepare rebuttal evidence for her hearing, Plaintiff complains that the Notice fails to comply with due process requirements. Plaintiff contradicts her assertion that the notice was defective when she described the circumstances of her arrest, recalls how she was told that her benefits would be terminated because of the criminal charge, and that she received "written notice to that effect" (citing the Notice of Termination). Dkt. 23, p. 3 ¶ 6. Any suggestion that she did not know why the Agency proposed to terminate her benefits is disingenuous— the Notice issued to her on the same day she was arrested, described why the Agency proposed to terminate her benefits (the same reason she was arrested), and Plaintiff admits she was verbally informed of the basis of the proposed termination. *See id.*; *Ervin v. Housing Auth. of Birmingham*, 281 Fed. Appx. 938, 941 (11th Cir. 2008) (quoting the *Billington* specificity requirement that notice must "enable an applicant to prepare rebuttal evidence to introduce at [her] hearing" and finding sufficient notice, even when the notice "did not specify the individual alleged to commit the illegal activity, nor the exact time," because the plaintiff "was well aware of the incident providing the factual basis for the termination notice.").

Plaintiff further asserts a lack of adequate notice because Defendant mailed two informal hearing notices to a "defunct" address. Dkt. 23, p. 2 ¶ 4. Plaintiff requested an informal hearing by submitting a request form to Defendant on October 31, 2008 that listed her then "current address."[8] Dkt. 16, Exhibit F. In response, Defendant mailed a Notice of Informal Hearing to Plaintiff on or about November 26, 2008, advising Plaintiff that her hearing was scheduled for December 5, 2008. Dkt. 22, Exhibit A-14.[9] The Notice mailed to the "current address" Plaintiff provided—it is undisputed that she lived at that address until December 6, 2008. *See* Dkt. 22, Exhibit A at 78:14-79:6, 99:1-5; Dkt. 22, Exhibit A-14. It is undisputed that no informal hearing was held on December 5, 2008. When Plaintiff actually moved from her "current address," she failed to notify Defendant that she no longer lived at that address and also failed to provide her new home address to Defendant. *See* Dkt. 22, Exhibit A-4 (Family Obligations nos. 12 & 14, requiring Plaintiff to provide prompt written notice to Defendant if any family member no longer resides in the unit or if the family is absent from the unit). Not knowing that Plaintiff had actually moved, Defendant mailed a second Notice of Informal Hearing to Plaintiff's "current address" on or about February 13, 2009, advising Plaintiff that her hearing was scheduled for February 27, 2009. Dkt. 16, Exhibit G. It is also undisputed that no informal hearing was held on February 27, 2009. Regardless of any actual or

---

[8] Plaintiff also provided a P.O. Box address, but did not request that Defendant not mail hearing notices to her "current address" and did not request that the hearing notices be mailed to the P.O. Box address as of a particular date. Plaintiff's request states "Mailing address P.O. Box 672024 Hou, TX 77267 as I will have to vacate unit soon due to not passing inspection." Dkt. 22, Exhibit A-13. The notice did not indicate that her landlord was attempting to evict her and did not state when she might move.

[9] The date of the hearing is obscured in the scan submitted as Exhibit A-14 to Dkt. 22. The date was visible in the exhibit when marked and submitted during Plaintiff's deposition.

perceived error by Defendant, Plaintiff's due process right to adequate notice was not prejudiced—the hearing officer determined that it was not necessary to hold an informal hearing because Plaintiff's benefits would not be terminated.

2. <u>Plaintiff's Benefits Were Not Terminated Because No Hearing was Held</u>.

Plaintiff's assertion that her benefits were terminated without good cause is baseless—no informal hearing was held and no decision was rendered by a hearing officer. Instead, the hearing officer rejected the proposed termination of benefits after determining that the theft by check charge was not the type of criminal activity for which HHA terminates housing assistance benefits.[10] Dkt. 22, pp. 8, 11, 14; Dkt. 22, Exhibit B. Had Plaintiff continued her attempt to move, and remained otherwise eligible to do so, she would have received a Section 8 voucher and could have looked for a new residence. Dkt. 22, p. 11.

**D.    Plaintiff is Not Entitled to Relief.**

Plaintiff seeks a declaration that her housing assistance benefits were wrongly terminated, immediate reinstatement of her benefits, a declaration that Defendant committed an error that caused her benefits to be "underpaid," reimbursement of her "underpaid" benefits, and actual damages. As discussed above and in Defendant's Motion for Summary Judgment, Dkt. 22, Plaintiff's benefits were not terminated and she can provide no evidence in support of her due process claims. For those reasons, and the reasons discussed below, Plaintiff is not entitled to the relief she seeks.

---

[10] Indeed, HHA was not required to provide an informal hearing regarding the proposed termination of Plaintiff's benefits because she was not under an outstanding HAP contract at the time the Agency proposed to terminate her benefits. *See* Dkt. 22, p. 14 (citing 24 C.F.R. § 982.555(a)(2)).

1. Plaintiff's Claim for Reimbursement of "Underpaid" Benefits is Not Supported by Fact or Law.

Plaintiff claims she is entitled to be reimbursed for "underpaid" benefits and specifically seeks at least $6,930 in "unpaid housing benefits attributable to HHA error from September 1, 2008, until February 28, 2010, ($358/month x 18 months)." Dkt. 23, p. 6 ¶¶ 14-15; Dkt. 20, p. 10 ¶ 3. Plaintiff argues that Part II of the Agency's "Administrative Plan for Section 8 Housing Programs" obligates Defendant to reimburse her for "underpaid" benefits. Dkt. 16, p. 7 ¶¶ 21-22; *see* Dkts. 23-11, 23-13 (Exhibits K and K2 to Plaintiff's Motion for Partial Summary Judgment—excerpts from Defendant's Administrative Plan for Section 8 Housing Programs). Part II of the Section 8 Administrative Plan does state that "HHA must reimburse a family for any underpayment of subsidy." Dkt. 23-13, p. 5; *see* Dkt. 16, p. 7 ¶ 22. The Administrative Plan, however, defines "underpayment" as including "a. an incorrect housing assistance **payment to the owner**, b. an incorrect family share established for the family, and c. an incorrect utility reimbursement to a family."[11] Dkt. 23-13, p. 3 ("Definitions") (emphasis added). It is undisputed that Defendant had a proper basis for terminating the HAP contract with Plaintiff's landlord—the unit was not properly maintained by the landlord. Defendant cannot make rent payments to a landlord after a HAP contract is terminated, even if a benefits recipient continues to reside in that unit. Accordingly, Defendant properly stopped making benefits payments after the HAP contract was cancelled—this is not an

---

[11] Plaintiff does not suggest that Defendant erred in regard to family share or utility reimbursement.

underpayment or incorrect payment to the owner.  Plaintiff's benefits reimbursement claim is without factual or legal basis.

    2.    <u>Defendant's Claims for "Actual Damages" are Unrelated to Defendant's Alleged Actions and Were Unforeseeable</u>.

Plaintiff seeks $9,081 in actual damages comprised of $1,262 for storage unit rental fees, $240 for moving costs, $450 to turn on utilities, $150 for lost security deposits, $6,555 for personal items sold at auction after she failed to pay storage unit fees, and $424 for the equity accrued in a vehicle that was repossessed.  The "actual damages" claimed by Plaintiff are unrelated to Defendant's alleged actions and were unforeseeable consequences of such alleged actions.  Dkt. 20, p. 10 ¶ 3; Dkt. 23, p. 6 ¶ 14; Dkt. 23-8.  Plaintiff's document production included a November 2007 receipt showing that she rented storage units before the alleged events took place that make the basis of her claims—Plaintiff's assertion that Defendant should pay for her ongoing storage fees is without merit.[12]  *See* November 8, 2007 Public Storage Receipt, attached hereto as Exhibit A.  It is further unforeseeable that any alleged act by Defendant would cause Plaintiff to rent a storage unit, that stored possessions would be sold at auction after Plaintiff failed to pay for the storage unit, and that her car would be repossessed—

---

[12] Plaintiff claims that Defendant's actions required her to rent storage units because she downsized from a three bedroom unit to a two bedroom unit.  *See* Dkt. 22, Exhibit A at 90:13-91:13.  The sheer volume of items listed by Plaintiff as having been stored and subsequently sold at auction is far more than one might expect to store after downsizing from three to two bedrooms—items including, but not limited to: china cabinet, buffet, curio, weight set, suitcases, gas can, ladder, bike, lawn chairs, Christmas tree, exercise bike, king set, queen set, twin set, and clothing for her adult son who did not live with her.  *See* Dkt. 23-8, pp. 8-9; Dkt. 22, Exhibit A at 89:8-91:21.  Even after allegedly placing such a large volume of items into storage due to downsizing Plaintiff claims she still "didn't have room to walk in some spots in this house" and she had no room for her "priceless" family bible.  *See* Dkt. 23-8, p. 8; Dkt. 22, Exhibit A at 90:13-91:13, 91:7-10.  Plaintiff's claim that downsizing necessitated incurring expenses for renting a storage unit is very doubtful given the volume of items stored and the fact that she already had a storage unit.

Plaintiff essentially seeks to have Defendant pay for any debt, expense, or misfortune that she believes was incurred since Defendant cancelled the HAP contract with her landlord. Plaintiff's demands for damages should be denied.

## CONCLUSION/PRAYER

Houston Housing Authority prays that the Court deny Plaintiff's Motion for Partial Summary Judgment, dismiss Plaintiff's claims against it with prejudice, and award it any and all further relief to which it may be justly entitled.

Respectfully submitted,

FELDMAN, ROGERS, MORRIS & GROVER, L.L.P.

_____
RICHARD A. MORRIS
Attorney-in-Charge
State Bar No. 14497750
Fed. ID No.   15004
Email address:  rmorris@feldmanrogers.com
Adam D. Courtin
State Bar No. 24053153
Fed. ID No. 712007
Email address:  acourtin@feldmanrogers.com
5718 Westheimer, Suite 1200
Houston, Texas 77057
Telephone:   713/960-6000
Facsimile:    713/960-6025

ATTORNEYS FOR DEFENDANT
HOUSTON HOUSING AUTHORITY

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2010, I electronically filed the foregoing Defendant's Response to Plaintiff's Motion for Partial Summary Judgment with the Clerk of Court using the CM/ECF system and notice was electronically provided to the following CM/ECF system participants.

Mark J. Grandich
Yvonne Alvarez
Lone Star Legal Aid
1415 Fannin, Third Floor
Houston, Texas 77002

_____
Counsel for Defendant